UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SABRE GLBL, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**MELODY SHAN, also known as SHAN MELODY XIAOYUN,**<br><br>Defendant. | Docket No.: 15-cv-8900<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Sabre GLBL, Inc. ("Plaintiff" or "Sabre") brought this contract and tort action against Defendant Melody Shan ("Defendant" or "Shan") for breach of the parties' Employee Intellectual Property and Confidentiality Agreement ("EIPCA" or the "Agreement") and for violating the New Jersey Trade Secrets Act ("NJTSA").[1] The Court previously granted Sabre's motion to compel arbitration. Now pending before the Court are Sabre's motion to confirm the final arbitration award (the "Final Award") and Shan's competing motion to vacate the award.[2] There was no oral argument. Fed. R. Civ. P. 78(b). For the following reasons, Shan's motion to vacate the arbitration award is **GRANTED in part and DENIED in part**, and Sabre's motion to confirm the arbitration award is **GRANTD in part and DENIED in part**. The Court confirms the Arbitrator's award of damages and injunctive relief but finds that he "exceeded his power" under Section 10 of the Federal Arbitration Act ("FAA") by awarding attorneys' fees in direct contravention of the parties' Agreement, thereby subjecting that portion of the Award to vacatur.

---

[1] The complaint included a number of additional claims not relevant to this Court's decision.
[2] On January 12, 2018, Sabre moved to confirm the Arbitrator's Interim Award. ECF No. 10. That Award is identical to the Arbitrator's Final Award, except that the Final Award includes a determination on attorneys' fees. By confirming the Final Award, this Opinion and the accompanying Order render Shan's motion to confirm the Interim Award moot.

1

## I. BACKGROUND

### A. Factual Background

The following facts are drawn from the complaint and were largely recounted in the Court's April 2016 decision compelling arbitration. ECF No. 6. Defendant Shan, a New Jersey resident, was employed by Sabre Decision Technologies as a Consultant beginning in or around September 1996. In 2005, Shan was transferred to Sabre's Shanghai location to work as a Manager of Software Development. In connection with the transfer, Sabre and Shan entered into the EIPCA. In August 2013, Shan was transferred to Dallas Texas, whereupon the parties entered into a new version of this agreement (the "Employee Agreement" or "Agreement"). The Agreement substantively relates to confidentiality, non-solicitation, and non-competition, but three additional provisions of the Agreement are crucial to the pending motions. First, the Agreement states that "the State of Texas shall govern the construction, interpretation and enforcement of this Agreement." Second, "any and all claims, disputes, or controversies arising out of or related to this Agreement, or breach of this Agreement, shall be resolved by binding arbitration . . . ." And third, the parties "shall bear their own attorneys' fees, and shall bear equally the expenses of the arbitral proceedings, including without limitation the fees of the arbitrator." The Court will assess these provisions further below.

Shortly after transferring to Dallas in 2013, Shan began working remotely from her home in New Jersey. In 2014, Shan terminated her employment with Sabre, and Shan proceeded to create her own competing business, Pi Solution, and in doing so breached the Employee Agreement. In November 2015, Sabre brought several contract and tort claims in New Jersey state court. ECF No. 1. The complaint asserted that Shan misappropriated its trade secrets and confidential information, including customer data, private employee information, and source code. Using the customer information, Shan allegedly solicited and offered services to existing and prospective Sabre customers, and the employee information was used to hire away a number of Sabre employees. Lastly, Sabre asserts that Shan used the misappropriated source code to create a product similar to that developed and produced by Sabre.

### B. Arbitration

Shan removed this action to federal court and subsequently moved to compel arbitration, which the Court granted on April 6, 2016. On January 6, 2018, Arbitrator Mark Whittington (the "Arbitrator") issued an Interim Award. *See* Decl. Christine Amalfe, Ex. A. Applying Texas law (as directed by the choice-of-law provision), the Arbitrator found Shan liable for breaching the Agreement and for violating her fiduciary duty to Sabre. For the breach-of-contract claim, the Arbitrator awarded no damages but permanently enjoined Shan from "using or disclosing Sabre's confidential information," and further enjoined

Shan from competing with Sabre for a six-month period ending March 12, 2018.[3] For Shan's breach of fiduciary duty, the Arbitrator awarded Sabre a $200,000 salary disgorgement and $1,173,318 in "head-start" damages.[4] Final Award 11, ECF 18-3.

Next, although Texas law governs the contract itself, the Arbitrator found Shan separately liable for misappropriating trade secrets in violation of the NJTSA. The Arbitrator declined to award additional damages under the NJTSA because they would have been duplicative of those already awarded under Texas law for breach of Shan's fiduciary duty. Importantly, however, NJTSA contains a fee-shifting provision. N.J.S.A. § 56:15-6. Indeed, the Arbitrator's Final Award, issued on February 12, directed Shan to pay "reasonable and necessary attorneys' fees related to Shan's violation of the NJTSA in the amount of $450,000.00." Shan's pending motion to vacate argues, *inter alia*, that the decision to award attorneys' fees under a New Jersey statute contradicted the Agreement's choice-of-law provision as well as the provision in the Agreement stating that each party would bear its own attorney's fees. On February 20, 2018, Sabre moved to confirm the Final Award. Shan has moved to vacate.

## II. **LEGAL STANDARD**

Arbitration awards are subject to vacatur only in "exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (internal quotations omitted). *See Spinetti v. Service Corp Intern.*, 324 F.3d 212 (3d Cir. 2003) (discussing the "liberal federal policy favoring arbitration agreements."). Section 10 of FAA provides an exclusive of lists of grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Until the Supreme Court's 2008 decision in *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586-87 (2008), it was widely accepted that a court could also vacate an award if the arbitrator showed a "manifest disregard for the law." *See, e.g.*,

---

[3] Sabre was unable to calculate lost profit damages with "objective facts, figures or data . . . ," as required under Texas law for a breach of contract claim. *See* Final Award 8.

[4] Plaintiff defines head start damages here as the "increase in the value of Pi Solution resulting from the undeserved 2-year head start it received in the marketing and selling of its products and services." Sabre Opp'n Br. 16, ECF No. 20.

*Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). *Hall*, however, held that "the text [of the FAA] compels a reading of [Section 10] as exclusive." *Id.* at 586. Circuit courts are nonetheless divided as to whether an arbitrator's "manifest disregard of the law" constitutes a basis for vacatur. *See Bellantuono v. ICAP Securities USA, LLC*, 557 F. App'x 168 (3d Cir. 2014). The Third Circuit has repeatedly declined to enter the fray, most recently in December 2017. *See Anoruo v. Tenet Health System Hahnemann*, 697 F. App'x 110 (3d Cir. 2017) (not binding precedent) ("We have not ruled on whether a court may also still vacate an award for a 'manifest disregard of the law' after *Hall*."); *Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 256 n. 13 (3d Cir. 2016)). In this case, Shan frames much of her argument within the framework of "manifest disregard for the law."[5]

Without clear guidance from the Third Circuit, this Court presumes that if "manifest disregard for the law" survives *Hall*, it does so only as "judicial gloss" on one or more of the categories explicitly listed in § 10.[6] *See Stolt-Nielsen SA v. Animal Feeds Intern. Corp.* 548 F.3d 85, 93-95 (2d. Cir. 2008), *overruled on other grounds*, 559 U.S. 662 (2010). Certainly, "manifest disregard" is not an independent basis for vacatur in light of *Hall*, which declared Section 10 the "exclusive regime[] for the review provided by [the FAA]." *Hall St. Assocs., L.L.C.*, 522 U.S. at 590. Accordingly, this Opinion will refer directly to the text of FAA's Section 10—namely, whether the Arbitrator "exceeded [his] powers" under the FAA—rather than probe the Arbitrator's decision for "manifest disregard of the law."

### III. **DISCUSSION**

#### A. **Texas Contract Law and Shan's Breach of her Fiduciary Duty to Sabre**

Shan cites three statutory grounds for vacating the award under Section 10(a) of the FAA. First, Shan argues that the Arbitrator "exceeded [his] powers" under the FAA when he "intentionally ignored basic Texas law that precludes the award of 'saved development costs' absent a showing of the amount of the costs saved." *See* 9 U.S.C. § 10(a)(4). Second, Shan argues that she was deprived of due process because the Arbitrator permitted Sabre to submit an untimely expert report on "head start" damages shortly before the hearing, without permitting Shan the same opportunity. *See id.* § 10(a)(3). Third, Shan argues that the Final Award must be vacated on grounds of "partiality or corruption" because the Arbitrator was biased in favor for Sabre. *Id.* § 10(a)(2). The Court has considered these

---

[5] Sabre acknowledged the existing circuit split and preserved the issue for appeal. *See* ECF No. 20, Sabre's Opp'n Br. n. 10, 9.

[6] For example, one might argue that arbitrators who manifestly disregard the law have likely "exceeded their powers" within the meaning of the FAA. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (holding that "manifest disregard for the law" remains a valid ground for vacatur because it is "shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'").

arguments for vacatur and finds that each fails. In doing so, the Court notes that, as long as the arbitrator was even arguably applying the contract and thus acting within the scope of his authority, even a serious error does not warrant vacatur. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

1. Did the Arbitrator exceed his powers by intentionally ignoring the law?

Texas law is relatively flexible regarding the calculation of damages for breach of a fiduciary duty. *See Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 723 (5th Cir. 2006). ("[W]e recognize that plaintiffs are entitled to adapt their damage theory to fit within the particular facts of the case."). Shan nonetheless argues that disgorgement damages— including "head-start" damages—are unavailable for a breach of a fiduciary duty where an express contract exists. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W. 3d 671, 684 (Tex. 2000). Here, the Arbitrator awarded $1,173,318 in "head-start damages," which Sabre's expert calculated using the "increase in the value of Pi Solution resulting from the undeserved 2-year head start it received in the marketing and selling of its products and services." Sabre Opp'n Br. 16.[7] Shan argues that "head-start" damages are simply another term for "cost-avoidance" damages, and that by basing its calculations on the value of Shan's equity in Pi Solutions, the Arbitrator failed to use of the one of the three recognized methods of calculating cost avoidance. *See Carbo*, 166 F. App'x at 723.

The Court finds that the Arbitrator did not "exceed[] his powers under the FAA" by disgorging Shan of its estimated head-start advantage. As a basic premise, Texas law permits disgorgement damages for a breach of a fiduciary duty in some cases, but not in others. For example, both parties agree that salary disgorgement is an accepted equitable remedy for non-performance of an employment contract. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 891 (Tex. App. 2014). Although Shan characterizes this as an exclusive exception, ECF No. 12, at 18-19, "there is no clearly defined rule or principle of law in Texas that head start damages are unavailable to a claimant who establishes that a disloyal employee poached its employees and misappropriated its confidential information." ECF No. 20, Sabre Br. Opp. Def.'s Mot. Vacate 13. For these reasons, the Court cannot conclude that the Arbitrator exceeded his powers by awarding head-start damages under Texas law.

Next, Shan argues that the Arbitrator exceeded his powers by allowing Sabre to calculate head-start damages based on Shan's shareholder equity. Again, Shan appears to overstate the rigidity of Texas law as to damages. *See Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 724 (5th Cir. 2006) ("[W]e recognize that plaintiffs are entitled to adapt their damage theory to fit within the particular facts of the case."). Sabre's expert calculated $1,725,467 as the incremental value conferred on Pi Solutions by the misappropriated trade secrets over the relevant two-year head-start period. *See* Amalfe Supp. Decl. Ex. 5. The expert multiplied this figure by Shan's 68-percent ownership of Pi Solutions, to reach a

---

[7] The Arbitrator found insufficient evidence of "cost-avoidance" damages.

number ($1,173,318) representing the amount Shan personally benefitted from breaching her fiduciary duty. Shan provides no Texas case establishing a clean bar against using shareholder equity to calculate damages, so the Court cannot conclude that the Arbitrator "exceeded [his] powers" under the FAA.

### 2. Did the Arbitrator violate FAA Section 10(a)(3)?

Another basis for vacatur under the FAA is an arbitrator's "misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "The Third Circuit sets 'an extremely high bar' for vacating an award on the grounds of misconduct under Section 10(a)(3)." *BSC-C & C JV v. Louis Berger Group, Inc.*, No. 2:13-cv-06444, 2014 WL 3516246, at *4 (D.N.J. July 14, 2014)(WJM).

Shan argues that the Arbitrator violated § 10(a)(3) by allowing Sabre to submit an expert report on damages two months after the Arbitrator's previously-established deadline, and only 17 days prior to the arbitration hearing. Shan filed a motion to strike Dr. Vigil's report, objecting that she had not been given time to offer a competing expert report. *See* Amalfe Supp. Dec. Ex. 1. In response, Sabre argued that, in fact, Shan herself caused the delay by failing to timely produce documents upon which Dr. Vigil based his report. *See* Amalfe Supp. Dec. Ex. 2. Further, Shan remained able to cross-examine Dr. Vigil and to provide expert rebuttal testimony in lieu of a written report. Amalfe Supp. Dec. Ex. 3. After reviewing these arguments, the Arbitrator denied the motion to strike Dr. Vigil's report. *See* Peden Dec. Ex. 7; Amalfe Supp. Dec. Exs. 2 and 3. In short, the record suggests that both parties failed to meet one deadline or another; the record does not, however, evince "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

### 3. Did the Arbitrator exhibit "corruption or evident partiality"?

Finally, Plaintiff Shan argues that the Court should vacate the Final Award because the Arbitrator was biased in favor of Sabre. *See id.* § 10(a)(2) (providing for vacatur "where there was evident partiality or corruption in the arbitrators."). Shan essentially reasons that the Arbitrator so disregarded Texas law, and so impaired Shan's right to a fair hearing, that "the only reasonable explanation is that the arbitrator was partial to Sabre." ECF 12, Def. Shan's Opps. Mot. Confirm 8. As discussed above, the Court disagrees with these premises. Even assuming the Arbitrator misconstrued Texas law and failed to strictly enforce discovery deadlines, he did not exhibit "partiality or corruption."

## B. New Jersey Trade Secrets Act (NJTSA) and Attorneys' Fees

The Arbitrator also found that Shan violated the NJTSA, N.J.S.A. § 56:15-4, by misappropriating documents containing price strategy and other confidential information. *See* Final Award 13. The Arbitrator declined to award additional damages under the NJTSA because they would have been duplicative of those already awarded under Texas

law for breach of Shan's fiduciary duty. However, the NJTSA permits courts "to award the prevailing party reasonable attorney's fees and costs . . . if willful and malicious misappropriation exists." N.J.S.A. § 56:15-6. Applying the NJTSA's fee-shifting provision, the Arbitrator awarded Sabre $450,000 in attorney's fees, notwithstanding the parties' express agreement that each "shall bear their own attorneys' fees, and shall bear equally the expenses of the arbitral proceedings, including without limitation the fees of the arbitrator." ECF No. 13, Employment Agreement 6.

As a threshold matter, the Court finds that the Arbitrator did not exceed his power in applying New Jersey tort law to the parties' dealings, even though the parties chose Texas law to govern the Employment Agreement itself. *See Nuzzi*, 341 F. App'x. at 852 (applying New Jersey statutory tort claims in the presence of contract governed by California law); *Black Box Corp v. Markham*, 127 Fed. App'x. 22, 25 (3d Cir. 2005) (holding that a Pennsylvania choice-of-law provision, tailored to the parties' agreement rather than the "relationship between the [the parties]," did not preclude Arizona state law claim).

The power to apply New Jersey tort law, however, does not carry with it plenary authority to issue remedies expressly foreclosed by the parties' Agreement. Here, the Arbitrator awarded attorney's fees despite the parties' unambiguous agreement that each "shall bear their own attorneys' fees, and shall bear equally the expenses of the arbitral proceedings, including without limitation the fees of the arbitrator." ECF No. 13, Employment Agreement 6.[8] By including this provision, the parties restricted the Arbitrator's authority to award attorney fees. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 191 (3d Cir. 2010). The Court finds no precept of Texas law that permits arbitrators or courts to plainly disregard anti-fee shifting provisions in private contracts, regardless of whether the fees are awarded pursuant to an out-of-state tort statute. The Arbitrator therefore "exceeded [his] powers" by awarding attorney fees, and that portion of his decision is **VACATED**.

### C. Mitigation

Defendant Shan argues that she was denied a "mutual, final, and definite award" because the Arbitrator failed to rule specifically on each of Shan's defenses. *See* 9 U.S.C. § 10(a)(4). In particular, Shan argues that Sabre waited one-and-a-half years after Shan's departure from the company before filing suit, during which time the value of Pi-Solutions—which the Arbitrator used as a basis for calculating damages—increased substantially. Sabre responds that an arbitrator need not provide a detailed explanation for

---

[8] The Court is unconvinced that the JAMS Minimum Standards of Procedural Fairness trump the parties' express anti-fee-shifting agreement in this case. Nor did Shan waive her right to enforce the anti-fee-shifting provision by failing to object when Sabre—pursuant to the Minimum Standards—paid the entire $87,000 arbitration fee.

7

rejecting each argument, and notes that the Final Award "resolves all claims between the parties" and states that "[a]ll relief requested but not granted is denied."

The Court agrees with Sabre. The FAA does not authorize federal courts to vacate an arbitration award simply because the arbitrator's decision does not memorialize in detail why each defense or argument fails. *See Rain CII Carbon v. ConocoPhillips Co.*, 674 F.3d 469 (5th Cir. 2012). *See also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award."). The Court cannot conclude that the Arbitrator exceeded his power or otherwise violated the FAA by failing to explain why Shan's mitigation defenses failed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Shan's motion to vacate the arbitration award is **GRANTED in part and DENIED in part**. Pursuant to the accompanying Order, the Arbitrator's decision on damages and injunctive relief is **CONFIRMED**, and the decision to award attorney's fees to Sabre is **VACATED**.


　　　　　　　　　　　　　　　　　　　　/s/ William J. Martini
　　　　　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**

**April 23, 2018**